UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**SERGIO FIDEL FRANCO CABRERA,**

        Petitioner,

v.                                      Case No.  6:22-cv-1743-CEM-EJK

**SUSY ANAILSY OCHOA AMARANTE,**

        Respondent.
_____/

**ORDER**

THIS CAUSE is before the Court on Petitioner's Amended Verified Petition for the Return of Minor Children ("Petition," Doc. 17), wherein Petitioner seeks the return of his minor child to the Dominican Republic pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("the Hague Convention") and its implementing legislation, the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§ 9001–9011.

    **I.**    **FINDINGS OF FACT**[1]

---

[1] The facts provided herein are based on the sworn representations contained in the Verified Complaint. *Williams v. Rickman*, 759 F. App'x 849, 852 (11th Cir. 2019) ("A verified complaint is evidence 'equivalent [to] an affidavit.'"). Respondent did not dispute these facts.

Petitioner and Respondent are the biological parents of the child and share parental rights of the child, who is nine years old. (Doc. 17 at 1–2, 9). The child was born in the Dominican Republic and has resided there since birth. (*Id.* at 1; Birth Cert., Doc. 17-1, at 1). The child has also been attending school and participating in extracurricular activities in the Dominican Republic since 2016. (Doc. 17 at 9, 11; School Letter, Doc. 17-3, at 1).

Respondent, who is the child's mother, holds dual citizenship in the Dominican Republic and the United States and has been residing in the United States since April 2021. (Doc. 17 at 2). In December 2021, Respondent obtained permission from Petitioner to take the child to Florida for approximately three weeks during a school vacation. (*Id.* at 2, 7, 12). At some point after granting permission for Respondent to take the child to Florida for a vacation, Petitioner "discover[ed] Respondent's intention to illegally retain the child," so Petitioner revoked his permission to allow the child to travel to Florida. (*Id.* at 12). Respondent proceeded by taking the child to Florida and refusing to return him to Petitioner in the Dominican Republic. (*Id.* at 12). "Petitioner has made numerous attempts" to secure the return of the child to the Dominican Republic and has been unsuccessful in those attempts. (*Id.* at 3). Through contact with the United States Department of State and the police in Lake Mary, Florida, Petitioner learned that Respondent and the child are currently living in Lake Mary, Florida. (*Id.*).

Petitioner then filed the Petition, which requests that the Court "[o]rder that the child be returned forthwith to Dominican Republic in the company of [his] father, Petitioner." (Doc. 17 at 18). On November 7, 2022, the Court held an evidentiary hearing on the Petition, (Min. Entry, Doc. 43, at 1). Both parties appeared at the evidentiary hearing with their counsel.

## II.   CONCLUSIONS OF LAW

As noted, the Petition was filed pursuant to the Hague Convention and its implementing legislation, ICARA. The objectives of the Hague Convention are "to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and . . . to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." Hague Convention, art. 1. Both the United States and the Dominican Republic are Contracting States. Status Table, Hague Conference on Private International Law (Nov. 7, 2022) http://www.hcch.net/index_en.php?act=conventions.status&cid=24. To effectuate the Hague Convention's goals, "an individual may petition a court authorized to exercise jurisdiction in the place where a child is located for the return of the child to his habitual residence in another signatory country." *Chafin v. Chafin*, 742 F.3d 934, 936 (11th Cir. 2013). In addressing such a petition, a court may "determine only rights under the Convention and not the merits of an underlying child custody dispute." *Id*.

In order to prevail, Petitioner must show by a preponderance of the evidence: "(1) [the child was a] habitual resident of [the Dominican Republic] immediately before [the unlawful] retention in the United States, (2) the retention was in breach of [Petitioner's] custody rights under [Dominican] law, and (3) [Petitioner] had been exercising [his] custody rights at the time of retention." *Id.* at 938. Generally, if a petitioner establishes these elements, a court must order the return of the child to his habitual residence in order for that country to determine the underlying custody dispute unless one of the exceptions applies. Hague Convention, arts. 12, 13; *Furnes v. Reeves*, 362 F.3d 702, 710 (11th Cir. 2004) *abrogated on other grounds by Lozano v. Montoya Alvarez*, 572 U.S. 1 (2014).

At the evidentiary hearing, Respondent's counsel informed the Court that Respondent consents to the granting of the Petition. Upon review of the evidence, the Court agrees that the Petition is due to be granted. Petitioner has demonstrated that the child was a habitual resident of the Dominican Republic prior to Respondent's refusal to return the child. He has also provided legal authority establishing that Petitioner has custody rights of the child. And finally, Petitioner has demonstrated that he was exercising his parental rights at the time of Respondent's retention of the child. Additionally, there is no evidence that any of the Hague Convention exceptions apply here. Accordingly, the Court will grant the Petition.

The only issues remaining are when and how the child should be returned to the Dominican Republic. Petitioner requests that the Court order the child return immediately to the Dominican Republic in the company of Petitioner.[2] Respondent requests that the child be permitted to stay with her in the United States through completion of the school year, which is approximately December 16, 2022, and then that the Respondent be the one to accompany the child back to the Dominican Republic.

"The Convention proposes a six-week timeframe from the initial filing of the petition to a decision regarding return. While other countries have enacted provisions containing mandatory timeframes for return proceedings and appeals, Congress did not provide such a timetable when enacting the ICARA. The Supreme Court has recommended that 'courts . . . take steps to decide these cases as expeditiously as possible, for the sake of the children who find themselves in such an unfortunate situation.'" *Chafin*, 742 F.3d 934, 935–37 (internal citations and footnotes omitted) (citing *Chafin v. Chafin*, 568 U.S. 165, 179 (2013)). The Supreme Court has made clear not only that the Court should act on petitions for return as expeditiously as

---

[2] Petitioner requested that he be permitted to pick up the child at 5:00 PM today and immediately accompany the child back to the Dominican Republic. The Court informed Petitioner that the Court would likely not be able to rule on the Petition that quickly but would be issuing the instant Order as quickly as possible.

possible but also that "[t]he Hague Convention mandates the prompt return of children to their countries of habitual residence."[3] *Chafin*, 568 U.S. at 180.

Respondent did not identify any legal authority—nor has the Court identified any such authority—that permits the Court to delay the prompt return of a child once it has been determined that a petition is due to be granted. Indeed, what little legal authority there is on the issue suggests that any stay of a return order is inapposite to the purposes of the Hague Convention. *Rath v. Marcoski*, No. 8:16-cv-2016-T-23AEP, 2016 U.S. Dist. LEXIS 171274, at *11 (M.D. Fla. Dec. 12, 2016) ("Because a stay . . . conflicts with the Hague Convention's attempt to secure a child's 'prompt return' to his country of habitual residence, *Chafin* warns against the 'routine' granting of a stay in a Hague Convention action." (citing *Chafin*, 568 U.S. at 178)); *Friedrich v. Friedrich*, 78 F.3d 1060, 1063 n.1 (6th Cir. 1996) (noting that the district court's staying of a Hague return order "may have been improvident" and that "[s]taying the return of a child in an action under the Convention should hardly be a matter of course" because "[t]he aim of the Convention is to secure prompt return of the child to the correct jurisdiction, and any unnecessary delay renders the

---

[3] ICARA permits courts to take "measures under Federal or State law, as appropriate, to protect the well-being of the child involved . . . *before the final disposition of the petition*." 22 U.S.C. § 9004(a) (emphasis added). However, once the Court determines that the Petition is due to be granted and none of the exceptions apply, the Court no longer has such discretion.

subsequent return more difficult for the child"). Accordingly, the Court will order that the child be promptly returned to the Dominican Republic.

### III.   CONCLUSION

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. Petitioner's Amended Verified Petition for the Return of Minor Children (Doc. 17) is **GRANTED**.

2. This case is set for a telephonic status conference on **November 9, 2022, at 9:30 AM** to discuss the logistics for the child promptly returning to the Dominican Republic.

3. Prior to the status conference, counsel for both parties shall confer regarding this issue.

**DONE** and **ORDERED** in Orlando, Florida on November 7, 2022.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record